# No. 23-5662

===

## IN THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

———————

**DAN CARMAN, COIN CENTER, RAYMOND WALSH, and QUIET INDUSTRIES CORP.,**

**Plaintiffs-Appellants**

v.

**JANET YELLEN, in her official capacity as Secretary of the Treasury, U.S. DEPARTMENT OF THE TREASURY, DANIEL WERFEL, in his official capacity as the Commissioner of Internal Revenue, INTERNAL REVENUE SERVICE, MERRICK B. GARLAND, in his official capacity as Attorney General, and UNITED STATES OF AMERICA,**

**Defendants-Appellees**

———————

## ON APPEAL FROM THE JUDGMENT OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

———————

## BRIEF FOR THE APPELLEES

———————

DAVID A. HUBBERT
 *Deputy Assistant Attorney General*

FRANCESCA UGOLINI          (202) 514-3361
ELLEN PAGE DELSOLE          (202) 514-8128
GEOFFREY J. KLIMAS          (202) 307-6346
 *Attorneys*
 *Tax Division*
 *Department of Justice*
 *Post Office Box 502*
 *Washington, D.C. 20044*

*Of Counsel:*
CARLTON S. SHIER, IV
 *United States Attorney*

15256052.1

# TABLE OF CONTENTS

**Page**

Table of contents.................................................................................i
Table of authorities ........................................................................iv
Statement regarding oral argument...............................................x
Glossary .........................................................................................xi
Jurisdictional statement ................................................................1

    A.    District Court jurisdiction ........................................1

    B.    Appellate jurisdiction................................................3

Statement of the issue....................................................................3
Statement of the case ....................................................................4

    A.    The nature of the case and course of proceedings in the District Court ............................................................4

    B.    The relevant facts......................................................5

        1.    The role of information reporting requirements in the federal tax system ...................................5

        2.    The reporting requirements in Section 6050I of the Internal Revenue Code ....................................7

        3.    Plaintiffs and their use of cryptocurrency ...................10

    C.    Proceedings in the District Court.........................................12

Summary of argument ........................................................................15
Argument:

    The District Court correctly dismissed plaintiffs' suit for lack of jurisdiction...................................................................17

        Standard of review ..................................................................17

15256052.1

**Page**

A.    Introduction: Article III standing and ripeness .................. 17

B.    The District Court correctly held that it lacked
      jurisdiction over each of plaintiffs' claims .......................... 21

        1.    Plaintiffs lack standing to assert a Fourth
              Amendment claim, which is unripe in any event ........ 21

              a.    Plaintiffs lack standing to assert a Fourth
                    Amendment claim ................................................ 21

              b.    Plaintiffs' Fourth Amendment claim is
                    unripe ................................................................ 31

        2.    Plaintiffs lack standing to assert a First
              Amendment claim, which is unripe in any event ........ 38

              a.    Plaintiffs lack standing to assert a First
                    Amendment claim ................................................ 38

              b.    Plaintiffs' First Amendment claim is unripe ...... 42

        3.    Plaintiffs lack standing to assert a Fifth
              Amendment void-for-vagueness claim, which is
              unripe in any event ...................................................... 43

              a.    Plaintiffs lack standing to assert a Fifth
                    Amendment void-for-vagueness claim ............... 43

                    i.    Plaintiffs lack standing to challenge the
                          alleged vagueness of the phrase "the
                          person from whom the cash was
                          received" ..................................................... 44

                    ii.   Plaintiffs lack standing to challenge the
                          alleged vagueness of the phrase "the
                          date of the transaction" ............................. 48

**Page**

iii.    Plaintiffs lack standing to challenge the alleged vagueness of the phrase "the entire transaction occurs outside the United States" ............................................. 50

b.    Plaintiffs' void-for-vagueness claim is unripe .... 51

4.    Plaintiffs lack standing to assert an enumerated powers claim, which is unripe in any event ................ 53

a.    Plaintiffs lack standing to assert an enumerated powers claim ................................... 53

b.    Plaintiffs' enumerated powers claim is unripe .. 55

5.    Plaintiffs lack standing to assert a Fifth Amendment testimonial privilege claim, which is unripe in any event ........................................................ 56

a.    Plaintiffs lack standing to assert a testimonial privilege claim ................................. 56

b.    Plaintiffs' testimonial privilege claim is unripe .................................................................. 58

C.    Plaintiffs' non-constitutional injuries do not provide them with standing to pursue constitutional claims ............ 60

Conclusion ......................................................................................... 69

Certificate of compliance .................................................................. 70

Addendum .......................................................................................... 71

15256052.1

-iv-

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*15 West 17th Street LLC v. Commissioner*,
    147 T.C. 557 (2016) ............................................................. 32
*Acker v. Commissioner*,
    258 F.2d 568 (6th Cir. 1958) ............................................. 8, 53
*Am. Civil Liberties Union v. Nat'l Sec. Agency*,
    493 F.3d 644 (6th Cir. 2007) ................................................ 61
*Amezola-Garcia v. Lynch*,
    846 F.3d 135 (6th Cir. 2016) ...........................26, 40-41, 64-65
*Ammex, Inc. v. Cox*,
    351 F.3d 697 (6th Cir. 2003) .......................................... 19, 38
*Ass'n of Am. Physicians & Surgeons v. U.S. Food &*
    *Drug Admin.*,
    13 F.4th 531 (6th Cir. 2021) ....................................22, 24-26
*Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*,
    397 U.S. 150 (1970) ............................................................. 62
*Barrows v. Jackson*,
    346 U.S. 249 (1953) ............................................................. 63
*Bates v. City of Little Rock*,
    361 U.S. 516 (1960) ............................................................. 39
*Bennett v. Spear*,
    520 U.S. 154 (1997) ............................................................. 62
*Blanchette v. Conn. Gen. Ins. Corps.*,
    419 U.S. 102 (1974) ............................................................. 36
*Calif. Bankers Ass'n v. Shultz*,
    416 U.S. 21 (1974) ........................................................ 57, 67
*CHKRS, LLC v. City of Dublin*,
    984 F.3d 483 (6th Cir. 2021) .................................... 18, 61, 68
*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ............................................................. 18
*Connection Distrib. Co. v. Holder*,
    557 F.3d 321 (6th Cir. 2009) .......................................... 59- 60
*Crawford v. U.S. Dep't of Treasury*,
    868 F.3d 438 (6th Cir. 2017) .......................................... 18, 67

**Cases (cont'd):**                                          **Page(s)**

*Davis v. Fed. Election Comm'n,*
   554 U.S. 724 (2008) ........................................................ 61, 68

*Davis v. United States,*
   564 U.S. 229 (2011) .............................................................. 68

*Doster v. Kendall,*
   54 F.4th 398 (6th Cir. 2022) ........................................... 20, 66

*Harper v. Rettig,*
   --- F. Supp. 3d ---, 2023 WL 3689528
   (D. N.H. May 26, 2023), *appeal docketed,*
   No. 23-1565 (1st Cir.) ............................................................ 28

*Hicks v. State Farm Fire and Casualty Co.,*
   965 F.3d 452 (6th Cir. 2020) ................................................. 68

*Huish Detergents, Inc. v. Warren Cty., Ky.,*
   214 F.3d 707 (6th Cir. 2000) .................................... 62-63, 68

*Kanuszewski v. Mich. Dep't of Health & Human Servs.,*
   927 F.3d 396 (6th Cir. 2019) ................................................. 62

*Katz v. United States,*
   389 U.S. 347 (1967) ............................................................... 28

*Kiser v. Reitz,*
   765 F.3d 601 (6th Cir. 2014) ........................................... 17, 19

*Klimas v. Comcast Cable Commc'ns, Inc.,*
   465 F.3d 271 (6th Cir. 2006) ................................................. 68

*Kolender v. Lawson,*
   461 U.S. 352 (1983) ............................................................... 43

*Loving v. I.R.S.,*
   917 F. Supp. 2d 67 (D.D.C. 2013) .......................................... 5

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ................................................... 17-18, 67

*Morrison v. Bd. of Educ. of Boyd Cty.,*
   521 F.3d 602 (6th Cir. 2008) ................................................. 40

*Nat'l Fed'n of Indep. Bus. v. Sebelius,*
   567 U.S. 519 (2012) ............................................................... 37

*Nat'l Rifle Ass'n of Am. v. Magaw,*
   132 F.3d 272 (6th Cir. 1997) ................................................. 52

*Norton v. Ashcroft,*
   298 F.3d 547 (6th Cir. 2002) ................................................. 19

15256052.1

**Cases (cont'd):** **Page(s)**

*Parsons v. U.S. Dep't of Justice,*
  801 F.3d 701 (6th Cir. 2015) .....................18, 40-41, 61-62, 68

*Republican Party of La. v. Fed. Election Comm'n,*
  219 F. Supp. 3d 86 (D.D.C. 2016) ......................................... 68

*Smith v. Jefferson Cty. Bd. of School Comm'rs,*
  641 F.3d 197 (6th Cir. 2011) ................................................. 63

*State Nat'l Bank of Big Spring v. Lew,*
  795 F.3d 48 (D.C. Cir. 2015) (Kavanaugh, J.) ...................... 65

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014) ......................................................... 19-20

*Thomas More Law Ctr. v. Obama,*
  651 F.3d 529 (6th Cir. 2011) ................................................. 37

*TransUnion LLC v. Ramirez,*
  141 S. Ct. 2190 (2021) ........................................................... 61

*United States v. Bisceglia,*
  420 U.S. 141 (1975) ................................................................. 5

*United States v. Comstock,*
  560 U.S. 126 (2010) ............................................................... 53

*United States v. Goldberger & Dubin, P.C.,*
  935 F.2d 501 (2d Cir. 1991) ..........................................7-8, 28

*United States v. Gratkowski,*
  964 F.3d 307 (5th Cir. 2020) ................................................... 9

*United States v. Hubbell,*
  530 U.S. 27 (2000) ............................................................56-57

*United States v. May-Shaw,*
  955 F.3d 563 (6th Cir. 2020) ................................................. 21

*United States v. Ritchie,*
  15 F.3d 592 (6th Cir. 1994) ................................................... 23

*United States v. Universal Mgmt. Servs., Inc. Corp.,*
  191 F.3d 750 (6th Cir. 1999) ................................................. 64

*Vonderhaar v. Village of Evendale, Oh.,*
  906 F.3d 397 (6th Cir. 2018) ..........................................62, 68

*Warshak v. United States,*
  532 F.3d 521 (6th Cir. 2008) ..........................................19, 34

*Warth v. Seldin,*
  422 U.S. 490 (1975) ......................................................58, 63-64

-vii-

**Statutes:** **Page(s)**

Internal Revenue Code (26 U.S.C.):

§ 61(a) ............................................................... 23
§ 162 .................................................................. 24
§ 501(c)(4) ......................................................... 23
§ 6001 ................................................................ 23
§ 6011 ................................................................. 7
§ 6041(a) ........................................................ 7, 31
§ 6041(c) ........................................................ 7, 30
§ 6045(g)(3)(D) ................................................... 8
§ 6050I ........................... 2-5, 7-12, 15-16, 21-24, 26, 31-36,
                         39-40, 42-44, 48, 50-52, 54-59, 65-67
§ 6050I(a) ........................................ 7, 22, 24, 32, 40
§ 6050I(b)(1) ..................................................... 32
§ 6050I(b)(2)(A) .................................................. 44
§ 6050I(b)(2)(C) .................................................. 48
§ 6050I(b)(2)(D) .................................................. 32
§ 6050I(c)(2) ................................................... 50-51
§ 6050I(d)(3) ................................... 8, 44-45, 48-49
§ 6050I(e) .......................................................... 7
§ 6051 ................................................................. 7
§ 6103(*l*)(15) ..................................................... 10
§ 6721-6722 ......................................................... 8
§ 7203 ................................................................ 8
§ 7701 ................................................................ 3

28 U.S.C.:

§ 1291 ................................................................ 3
§ 1331 ................................................................ 2
§ 1346(a)(2) ........................................................ 2

31 U.S.C.:

§ 5313 ............................................................... 10
§ 5319 ............................................................... 10

15256052.1

**Statutes (cont'd):**                                                 **Page(s)**

Infrastructure Investment and Jobs Act,
   P.L. 117-58, § 80603, 135 Stat. 429 (2021) ...........................9

**Regulations:**

Treasury Regulations (26 C.F.R.):

§ 1.6001-1(a) ........................................................................23
§ 1.6041-6........................................................................... 31
§ 1.6050I-1 ..........................................................................33
§ 1.6050I-1(a)(2)-(3)...........................................................52
§ 1.6050I-1(c)(1)...............................................................33
§ 1.6050I-1(c)(6)................................................................24
§ 1.6050I-1(d)(4) ................................................................52

**Miscellaneous:**

Comm. On Finance, U.S. Senate, *Tax Administration:
   Costs and Uses of Third-Party Info. Returns*
   (2007), available at https://www.gao.gov/assets/gao-08-
   266.pdf (last visited Nov. 29, 2023) ........................................6

Fed. R. App. P. 4(a)(1)(B) ..................................................3

https://bitcoin.org/en/faq#is-bitcoin-fully-virtual-and-immaterial
   (last visited Nov. 21, 2023) ................................................27

https://bitcoin.org/en/protect-your-privacy
   (last visited Nov. 21, 2023) ........................................27, 29-30

https://www.airbnb.com/help/article/1170
   (last visited Nov. 14, 2023) .................................................46

https://www.investopedia.com/terms/c/cryptocurrency.asp
   (last visited Nov. 27, 2023) ................................................9

**Miscellaneous (cont'd):**                                    **Page(s)**

https://www.irs.gov/newsroom/irs-updates-tax-gap-projections-for-2020-2021-projected-annual-gap-rises-to-688-billion (updated Oct. 12, 2023) .......................................................... 5

https://www.irs.gov/pub/irs-utl/2023-2024-priority-guidance-plan-initial-version.pdf (last visited Nov. 26, 2023) ..................................................... 33

https://www.jct.gov/publications/2021/jcx-33-21 (report dated Aug. 2, 2021) ............................................................................ 8

https://www.reginfo.gov/public/do/eAgendaViewRule?publd=202210&RIN=1545-BQ45 (last visited Nov. 26, 2023).................... 33

Morse, Karlinsky & Bankman, Cash Business and Tax Evasion, 20 Stan. L. & Pol'y Rev. 37 (2009)........................................... 6

P.L. 75-554, 52 Stat. 447, § 147(a) (1938) ....................................... 6

STAFF OF J. COMM. ON TAXATION, 98TH CONG., GENERAL EXPLANATION OF THE REVENUE PROVISIONS OF THE DEFICIT REDUCTION ACT OF 1984 (Comm. Print 1984) .......... 7

STAFF OF J. COMM. ON TAXATION, 117TH CONG., TECHNICAL EXPLANATION OF SECTION 80603 (Comm. Print 2021) ........... 8

U.S. CONST. amend. I .................................................................... 38

U.S. CONST. amend. IV.................................................................. 21

U.S. CONST. amend. V ............................................................. 43, 56

U.S. CONST. art. I, § 8 cl. 1 ........................................................... 53

-x-

## STATEMENT REGARDING ORAL ARGUMENT

This case presents the question whether plaintiffs can, in the absence of a colorable argument that they have an ongoing or imminent threat to their individual constitutional rights, challenge the constitutionality of a congressionally enacted statute.  Because of the importance of this issue, the Government requests oral argument.

# GLOSSARY

| Term | Definition |
| --- | --- |
| Br. | Appellants' opening brief on appeal |
| The Government | Secretary of the Treasury, U.S. Department of Treasury, Commissioner of Internal Revenue, Internal Revenue Service, Attorney General, and United States |
| I.R.C. | Internal Revenue Code (26 U.S.C.) |
| IRS | Internal Revenue Service |
| Plaintiffs | Dan Carman, Coin Center, Raymond Walsh, and Quiet Industries Corp. |
| Treas. Reg. | Treasury Regulation (26 C.F.R.) |

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

------

### No. 23-5662

## DAN CARMAN, COIN CENTER, RAYMOND WALSH, and QUIET INDUSTRIES CORP.,

**Plaintiffs-Appellants**

**v.**

## JANET YELLEN, in her official capacity as Secretary of the Treasury, U.S. DEPARTMENT OF THE TREASURY, DANIEL WERFEL, in his official capacity as the Commissioner of Internal Revenue, INTERNAL REVENUE SERVICE, MERRICK B. GARLAND, in his official capacity as Attorney General, and UNITED STATES OF AMERICA,

**Defendants-Appellees**

------

## ON APPEAL FROM THE JUDGMENT OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

------

## BRIEF FOR THE APPELLEES

------

## JURISDICTIONAL STATEMENT

### A.    District Court jurisdiction

Dan Carman, Coin Center, Raymond Walsh, and Quiet Industries Corp. (collectively, "plaintiffs") brought this suit against the Secretary of the Treasury, U.S. Department of Treasury, Commissioner of

15256052.1

Internal Revenue, Internal Revenue Service ("IRS"), Attorney General, and United States (collectively, "the Government") in the District Court, challenging the constitutionality of Congress's 2021 amendment to Section 6050I of the Internal Revenue Code ("I.R.C.") (26 U.S.C.). (Compl., RE 1, Page ID # 1-71.)  In their amended complaint, plaintiffs asserted five separate constitutional claims, and they sought a declaration that the amendment to Section 6050I was "facially unconstitutional" and a nationwide injunction against its enforcement. (Am. Compl., RE 27, Page ID # 256-332.)  Plaintiffs invoked the District Court's jurisdiction under 28 U.S.C. §§ 1331 and 1346(a)(2).  (*Id.* at Page ID # 261.)  However, the court concluded that, for each claim, Article III standing was lacking, the claim was unripe, or both.  (Opin., RE 34, Page ID # 466-487.)  On July 19, 2023, the court entered a judgment dismissing plaintiffs' amended complaint pursuant to an opinion and order granting the Government's motion to dismiss.  (*Id.*; Judgment, RE 35, Page ID # 488.)  That judgment was final, resolving all claims of all parties.

## B.    Appellate jurisdiction

On July 21, 2023, plaintiffs filed a timely notice of appeal.  Fed. R. App. P. 4(a)(1)(B); (Not. of App., RE 36, Page ID # 489-490.)  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

For decades, Section 6050I of the Internal Revenue Code has provided that any person who receives more than $10,000 in cash (or cash equivalents) in the course of a trade or business must file a return with the IRS that identifies the person from whom the cash was received, the amount of cash, and the date and nature of the transaction.  *See also* I.R.C. §7701 (defining a "person" to include "an individual, a trust, estate, partnership, association, company or corporation").  In 2021, Congress amended Section 6050I to extend that reporting obligation to transactions involving digital assets, including cryptocurrency.  Plaintiffs asserted five pre-enforcement, facial challenges to the amendment to Section 6050I, including claims under the First, Fourth, and Fifth Amendments.  The District Court held that plaintiffs had failed to establish an ongoing or imminent threat to their individual constitutional rights; therefore, they lacked standing to seek

equitable relief protecting such rights or, alternatively, their
constitutional claims were unripe.

On appeal, plaintiffs argue that they have standing to assert their
constitutional claims—and that those constitutional claims are ripe—
based on threats to their non-constitutional interests, such as the costs
of complying with the amended Section 6050I.  Under these
circumstances, the question presented is whether the District Court
correctly concluded that it lacked jurisdiction over plaintiffs' amended
complaint.

## STATEMENT OF THE CASE

### A.    The nature of the case and course of proceedings in the District Court

At issue in this case is plaintiffs' allegation that Congress's
2021 amendment to Section 6050I of the Internal Revenue Code is
unconstitutional on five separate grounds.  The Government moved to
dismiss plaintiffs' amended complaint for lack of jurisdiction and failure
to state a claim upon which relief could be granted.  The District Court
held that, for each of their five constitutional claims, plaintiffs had
failed to allege facts showing that they had Article III standing to
pursue the claim, the claim was unripe, or both.  The court therefore

dismissed plaintiffs' suit in its entirety.  In light of the court's
conclusion that it lacked jurisdiction over plaintiffs' amended complaint,
it did not reach the Government's alternative arguments that plaintiffs
had failed to plausibly allege any theory under which the amendment to
Section 6050I was unconstitutional.

### B.  The relevant facts

#### 1.  The role of information reporting requirements in the federal tax system

The federal tax system "is basically one of self-assessment in
which each taxpayer must compute the tax due, file a return showing
facts upon which tax liability may be determined and assessed, and pay
the tax due." *Loving v. I.R.S.*, 917 F. Supp. 2d 67, 69 (D.D.C. 2013)
(citations and internal quotations omitted).  As the Supreme Court has
observed, however, many taxpayers disregard their obligation to report
and pay taxes on all their income: "it would be naive to ignore the
reality that some persons attempt to outwit the system, and tax evaders
are not readily identifiable." *United States v. Bisceglia*, 420 U.S. 141,
145 (1975).  In the aggregate, billions of dollars go uncollected annually,
commonly referred to as the "tax gap." *See* https://www.irs.gov/

newsroom/irs-updates-tax-gap-projections-for-2020-2021-projected-annual-gap-rises-to-688-billion (updated Oct. 12, 2023) (estimating the projected tax gap for the 2021 tax year at $688 billion).

Information reporting, matching, and verification are essential tools that support the federal tax system. Indeed, Congress has imposed reporting requirements on people (including entities) involved in taxable transactions dating back over 80 years. *See* P.L. 75-554, 52 Stat. 447, § 147(a) (1938). Studies have repeatedly demonstrated the common-sense connection between information-reporting requirements and increased accuracy and tax compliance. *E.g.*, U.S. Gov't Accountability Office Report to the Comm. On Finance, U.S. Senate, *Tax Administration: Costs and Uses of Third-Party Info. Returns* 24-26 (2007), available at https://www.gao.gov/assets/gao-08-266.pdf (last visited Nov. 29, 2023); Morse, Karlinsky & Bankman, Cash Business and Tax Evasion, 20 Stan. L. & Pol'y Rev. 37, 39 (2009). Thus, Congress has enacted numerous reporting requirements, including the requirement that taxpayers file returns reporting their taxable income, that employers report payments made to their employees and

independent contractors, and that payors report other amounts paid for services and goods.  I.R.C. §§ 6011, 6041(a), (c), 6051.

### 2.    The reporting requirements in Section 6050I of the Internal Revenue Code

At issue here is a recent amendment to the longstanding reporting requirement codified at Section 6050I of the Internal Revenue Code.  As enacted in 1984, Section 6050I required people to file returns reporting transactions in which they received $10,000 or more in cash in the course of a trade or business, as well as to furnish written statements to each person whose name appeared on such a return.  I.R.C. § 6050I(a), (e).  In 1990, Congress amended Section 6050I to include foreign currency and certain cash equivalents like cashier's checks.  P.L. 101-508 (1990).  The purpose of Section 6050I was "to unearth the underground economy" of cash transactions, *United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 503 (2d Cir. 1991) (citation and internal quotation marks omitted), and "enable the Internal Revenue Service to identify taxpayers with large cash incomes," STAFF OF J. COMM. ON TAXATION, 98TH CONG., GENERAL EXPLANATION OF THE REVENUE PROVISIONS OF THE DEFICIT REDUCTION ACT OF 1984 at 491 (Comm. Print 1984).

15256052.1

-8-

People are subject to civil penalties if they fail to correctly file one or more returns and furnish the statements required under Section 6050I and, if their failure is willful, to criminal penalties as well. I.R.C. §§ 6721-6722, 7203. Courts have rejected constitutional challenges to Section 6050I, just as they rejected constitutional challenges to other information reporting requirements contained in the Internal Revenue Code. *E.g.*, *Goldberger & Dubin,* 935 F.2d at 503; *see also Acker v. Commissioner*, 258 F.2d 568, 572 (6th Cir. 1958).

In 2021, Congress extended the definition of "cash" under Section 6050I to include "digital assets." I.R.C. § 6050I(d)(3); *see also* STAFF OF J. COMM. ON TAXATION, 117TH CONG., TECHNICAL EXPLANATION OF SECTION 80603 at 4 (Comm. Print 2021); https://www.jct.gov/ publications/2021/jcx-33-21 (report dated Aug. 2, 2021) (estimating the revenue effect of new reporting requirements for cryptocurrency brokers and recipients at approximately $28 billion over an eight-year period). "Digital assets" are, in turn, defined as "any digital representation of value which is recorded on a cryptographically secured distributed ledger or any similar technology as specified by the Secretary." I.R.C. § 6045(g)(3)(D). As relevant here, "digital assets" include

-9-

cryptocurrencies.  Thus, as amended, Section 6050I requires the reporting of transactions made in the course of a trade or business and involving more than $10,000 of cash, foreign currency, certain monetary instruments, or digital assets.

Cryptocurrencies are digital assets that are circulated or exchanged on computer networks using blockchain technology. https://www.investopedia.com/terms/c/cryptocurrency.asp (last visited Nov. 27, 2023); *see also United States v. Gratkowski*, 964 F.3d 307, 309 (5th Cir. 2020).  Although their name suggests that they are a form of "currency" like U.S. dollars or British pounds, cryptocurrencies are not generally issued by a government.  https://www.investopedia.com/terms /c/cryptocurrency.asp.  Nor are they backed by any public or private entity.  *Id.*  Nonetheless, they are considered valuable by some investors, and they can be sent and received in exchange for services and goods, just as traditional government-issued currencies are sent and received.  *Id.*

The 2021 amendment to Section 6050I has an effective date of January 1, 2024.  Infrastructure Investment and Jobs Act, P.L. 117-58, § 80603, 135 Stat. 429, 1341 (2021).  In the proceedings below, the

parties and the District Court appeared to assume that the amendment

to Section 6050I would automatically go into effect on January 1, 2024.

As discussed in greater detail at pp. 32-33, *infra*, people's obligations

under the amended statute—including both their obligation to keep

records and their obligation to report transactions—will commence

following the promulgation of new implementing regulations.[1]

### 3.    Plaintiffs and their use of cryptocurrency

There are four plaintiffs in this case, each of whom uses or intends

to use cryptocurrency in a different way.  Dan Carman is an attorney

who lives in Fayette County, Kentucky.  (Am. Compl., RE 27, Page ID

# 291.)  Carman provides consulting services concerning Bitcoin, a

popular cryptocurrency, and is sometimes paid in cryptocurrency for

those services.  (*Id.* at Page ID # 291.)  In addition, Carman intends to

start a cryptocurrency mining company that will validate other users'

cryptocurrency transactions.  (*Id.* at Page ID # 291-292.)  Carman also

---

[1] Disclosure of returns filed under Section 6050I is governed by
Section 6103(*l*)(15).  *See* I.R.C. § 6103(*l*)(15).  That provision provides
that the disclosure of such returns can only be made for certain
purposes and is subject to the same conditions on disclosure applicable
to reports filed under 31 U.S.C. § 5313 (pertaining to reporting by
financial institutions).  *Id.*; *see also* 31 U.S.C. § 5319 (same).

-11-

intends to use cryptocurrency for transactions outside the course of his trade or business, including to advance his expressive associations such as advocacy and religious activities, at some point in the future. (*Id.* at Page ID # 292-293.)

Raymond Walsh is a software engineer and businessman who lives in California. (Am. Compl., RE 27, Page ID # 297.) Walsh owns and operates Quiet Industries, a Kentucky-based Bitcoin mining company. (*Id.*) Both Walsh and Quiet Industries send and receive cryptocurrency in connection with their Bitcoin mining business. (*Id.* at Page ID # 297-298, 300.) Walsh also intends to use cryptocurrency for transactions unrelated to his profit-generating activities at some point in the future. (*Id.* at Page ID # 299.)

Coin Center is a non-profit organization that engages in research, education, and advocacy activities concerning cryptocurrency. (Am. Compl., RE 27, Page ID # 261, 294-295.) Coin Center receives cryptocurrency as charitable contributions and sponsorships for its fundraising events. (*Id.* at Page ID # 295.)

-12-

## C.    Proceedings in the District Court

The 2021 amendment to Section 6050I has an effective date of January 1, 2024, although it will not automatically go into effect on that date.  *Supra*, p. 10; *infra*, pp. 32-33.  In June 2022, plaintiffs filed suit seeking a declaration that Section 6050I's cryptocurrency reporting requirement was "facially unconstitutional" and a nationwide injunction against its enforcement.  (Compl., RE 1, Page ID # 1-71.)

In their amended complaint, plaintiffs asserted five constitutional claims.  First, they alleged that the cryptocurrency reporting requirement constituted an unreasonable search in violation of the Fourth Amendment.  Second, they alleged that the reporting requirement could lead to their personal associations being revealed to the Government, either directly or through a series of investigative steps and analyses, in violation of the First Amendment.  Third, they alleged that the reporting requirement was unconstitutionally vague in violation of the Fifth Amendment.  Fourth, they alleged that the reporting requirement constituted a far-reaching surveillance regime untethered from Congress's power to lay and collect taxes and,

-13-

therefore, exceeded Congress's enumerated powers.[2]  Finally, they

alleged that the reporting requirement violated the Fifth Amendment's

prohibition against compelled self-incrimination.  (Am. Compl., RE 27,

Page ID # 256-332.)

The District Court determined that it lacked jurisdiction over each

of plaintiffs' claims and dismissed their suit in its entirety.  The court

held that plaintiffs' Fourth Amendment claim was unripe because

plaintiffs were not yet required to report any information and had failed

to allege facts showing they would likely suffer a Fourth Amendment

injury even after the requirement went into effect.  The court held that

plaintiffs lacked standing to assert a First Amendment claim, and that

such a claim was unripe in any event, because plaintiffs were

constrained only by their own subjective chill (*i.e.*, plaintiffs failed to

plausibly allege that any restriction on their associational activities was

---

[2] Plaintiffs also alleged that the reporting requirement fell outside
Congress's power to regulate interstate commerce.  Because the
requirement is clearly a proper exercise of Congress's taxing power, we
do not further address the requirement's relationship to Congress's
commerce power.  However, we reserve the right to defend the
requirement under both Congress's taxing power and its commerce
power if the case if remanded to the District Court for additional
proceedings.

attributable to government action rather than their own).  The court

held that plaintiffs' Fifth Amendment void-for-vagueness claim was

unripe because the Treasury Department had indicated an intention to

promulgate guidance that could resolve their vagueness concerns.  The

court held that plaintiffs' enumerated powers claim was unripe because

their amended complaint was devoid of any allegations that the

Government would actually use the information reported to create the

surveillance regime that plaintiffs feared.  And the court held that

plaintiffs' Fifth Amendment self-incrimination claim was unripe in the

absence of an actual or imminent assertion of their privilege against

self-incrimination.[3]  (Opin., RE 34, Page ID # 472-485.)

The District Court acknowledged plaintiffs' allegations that they

had injuries separate and apart from the individual constitutional

rights underlying their claims, such as compliance costs and potential

lost revenue.  However, the court held that, for purposes of its standing

---

[3] In light of its resolution of the jurisdictional issues, the District
Court declined to address the Government's alternative arguments that
plaintiffs' amended complaint failed to state a claim upon which relief
could be granted.  (Opin., RE 34, Page ID # 466.)  Plaintiffs similarly do
not address those arguments in their opening brief.  If this case is
remanded for further proceedings, the District Court should consider
those arguments in the first instance.

and ripeness analysis, plaintiffs needed to assert a violation of their constitutional rights and could not rely on other, non-constitutional injuries untethered from the claims at issue. (Opin., RE 34, Page ID # 485-486.)

## SUMMARY OF ARGUMENT

As amended in 2021, Section 6050I of the Internal Revenue Code requires people to file returns reporting their receipt of more than $10,000 of cash, foreign currency, certain monetary instruments, or cryptocurrency in the course of a trade or business. The District Court held that plaintiffs' suit, which asserted five constitutional challenges to the cryptocurrency portion of the reporting requirement, could not proceed because plaintiffs had failed to establish an ongoing or imminent threat to their corresponding constitutional rights. Whether framed in terms of Article III standing or in terms of ripeness, this holding is manifestly correct.

As to standing, a plaintiff asserting that a government action is unconstitutional must allege that the action violates his individual constitutional rights and cannot rely on other, non-constitutional injuries. For example, for plaintiffs' claim that the amendment to

Section 6050I violates the Fifth Amendment's prohibition against compelled self-incrimination, they need to allege that the reporting requirement represents an ongoing or imminent threat to implicate them in criminal conduct. They cannot, as plaintiffs argue on appeal, rely on the types of non-constitutional injuries that might be sufficient to establish standing in other contexts (such as that they will be the objects of the reporting requirement, will suffer economic injuries, will incur compliance costs, or will face a credible threat of enforcement if they do not comply). And here, plaintiffs have not alleged a harm that is cognizable under the relevant constitutional provision, either for their Fifth Amendment self-incrimination claim or any other.

As to ripeness, courts should consider, among other things, the likelihood that a plaintiff's complained-of harm will come to pass, the extent to which the relevant agency's position is subject to change prior to enforcement, and the potential hardship of delaying judicial review. Here, those factors demonstrate that plaintiffs' claims were not fit for judicial review because they challenged a reporting requirement that was not in effect at the time they filed suit, is still not in effect, and will

become effective following the Treasury Department's promulgation of regulations that may reduce or eliminate plaintiffs' concerns.

The District Court's judgment is correct and should be affirmed.

## ARGUMENT

### The District Court correctly dismissed plaintiffs' suit for lack of jurisdiction

#### Standard of review

This Court reviews *de novo* the District Court's dismissal of a claim for lack of standing or ripeness. *Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014).

### A.    Introduction: Article III standing and ripeness

1. Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). The "irreducible constitutional minimum" to meet Article III's case-or-controversy requirement is that a plaintiff have standing. *Id.* at 560. To have standing, a plaintiff must have (i) suffered an injury-in-fact that (ii) is fairly traceable to the challenged action of the defendant and (iii) is likely to be redressed by a favorable decision. *Id.* at 560-61. The burden of establishing each element is on the plaintiff. *Id.* at 561. In meeting its burden, the plaintiff must point

-18-

to facts that "affirmatively appear in the record" and cannot rely on inferences, arguments, or "even … the government's concession." *Crawford v. U.S. Dep't of Treasury*, 868 F.3d 438, 457 (6th Cir. 2017) (citation and internal quotations omitted).  The standing analysis is especially rigorous where, as here, a court is called upon to review the constitutionality of an action taken by another branch of the federal government.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

The critical inquiry in this case involves the first element of standing, injury-in-fact.  For purposes of standing, a plaintiff's injury must be both "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560 (citation and internal quotations omitted).  A "conjectural or hypothetical" injury is insufficient.  *Id.*  And as we discuss in greater detail at pp. 60-68, *infra*, when a claim is premised on an individual constitutional right, the plaintiff must allege facts showing a "colorable" or "arguable" invasion of that right.  *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 489 (6th Cir. 2021); *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 712 (6th Cir. 2015).  Other injuries untethered from the pertinent constitutional right (*e.g.*, compliance costs or lost revenue) are insufficient.  *See Parsons*, 801 F.3d at 711-13.

15256052.1

-19-

2. Closely related to standing is the doctrine of prudential ripeness. *Kiser*, 765 F.3d at 606. Ripeness "ensure[s] that courts decide only existing, substantial controversies, not hypothetical questions or possibilities." *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002) (citation and internal quotations omitted); *Warshak v. United States*, 532 F.3d 521, 528-29 (6th Cir. 2008) (courts should avoid "answering difficult legal questions before they arise"). This concern is particularly acute in cases like this one, where a plaintiff asserts a facial challenge to a congressionally enacted statute. *Warshak*, 532 F.3d at 528-29. In determining whether a claim is ripe, courts consider whether the alleged harm is likely to come to pass, if the factual record is sufficiently developed to permit adjudication, the extent to which the relevant agency's position is subject to change prior to enforcement, and the potential hardship if judicial review is delayed. *Ammex, Inc. v. Cox*, 351 F.3d 697, 706 (6th Cir. 2003).

The Supreme Court has observed that its prudential ripeness caselaw "is in some tension" with its recent caselaw reaffirming "the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." *Susan B. Anthony List v.*

*Driehaus*, 573 U.S. 149, 167 (2014) (citation and internal quotations

omitted). However, neither the Supreme Court nor this Court has

disavowed the prudential ripeness doctrine. *See id.* (declining to resolve

the doctrine's continuing vitality). In any event, the standing and

ripeness analyses largely dovetail with one another here, where

plaintiffs' alleged constitutional injuries are too speculative to satisfy

either doctrine.[4]

Plaintiffs have failed to establish that they have standing to

pursue any of their constitutional claims, and those claims are unripe in

any event. The District Court, therefore, correctly dismissed their suit

for lack of jurisdiction.

---

[4] As plaintiffs note, constitutional ripeness is largely duplicative of
Article III's injury-in-fact requirement. (Br. 34 (citing *Doster v.
Kendall*, 54 F.4th 398, 415 (6th Cir. 2022).) For that reason, we do not
separately address constitutional ripeness and simply rely on our
arguments that plaintiffs have failed to establish an actual or imminent
injury sufficient to confer Article III standing.

-21-

**B.    The District Court correctly held that it lacked jurisdiction over each of plaintiffs' claims**

**1.    Plaintiffs lack standing to assert a Fourth Amendment claim, which is unripe in any event**

**a.    Plaintiffs lack standing to assert a Fourth Amendment claim**

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. CONST. amend. IV. The interest that underlies the Fourth Amendment is protecting people's right to privacy. *See United States v. May-Shaw*, 955 F.3d 563, 567 (6th Cir. 2020) (Fourth Amendment protections apply when a person exhibits both "an actual (subjective) expectation of privacy in the place or thing searched" and that "expectation is one that society is prepared to recognize as reasonable") (citations and internal quotations omitted). Here, plaintiffs have failed to allege facts showing that Section 6050I's amended reporting requirement will lead to the Government obtaining any information in which they have a privacy interest, and, in fact, the allegations they have made show that the reporting requirement will not do so. Accordingly, there is no arguable invasion of plaintiffs' Fourth Amendment rights, much less an imminent invasion of those

rights, and they lack standing to assert a Fourth Amendment claim seeking equitable relief.

i.  As the District Court repeatedly emphasized, the only transactions that must be reported under the amendment to Section 6050I are those that occur in the course of a trade or business. (Opin., RE 34, Page ID # 468, 479, 481 (citing I.R.C. § 6050I(a)). Plaintiffs have alleged no facts showing that there is anything private about either the trades and businesses in which they are engaged or the transactions that they execute therein.  (*See id.* at Page ID # 481.)

Moreover, all the reportable cryptocurrency transactions in which three of the four plaintiffs (Carman, Walsh, and Quiet Industries) are allegedly engaged—namely the provision of services or goods in the course of a trade or business—will presumptively generate taxable income to the recipient and possibly a deduction to the sender.[5]  *See*

---

[5] Plaintiffs allege that it is possible for a cryptocurrency transaction to be subject to Section 6050I's reporting requirement and yet not "reportable for tax purposes."  (Am. Compl., RE 27, Page ID # 327.)  However, they have alleged no facts—much less a plausible set of facts—under which their cryptocurrency transactions would fall into this category.  *See Ass'n of Am. Physicians & Surgeons v. U.S. Food & Drug Admin.*, 13 F.4th 531, 543-44 (6th Cir. 2021) (applying plausibility standard to motion to dismiss on standing grounds).

I.R.C. § 61(a); *see also* I.R.C. § 6001; Treas. Reg. § 1.6001-1(a) (requiring taxpayers to keep the records necessary to file tax returns reporting their taxable income).  As such, each of these transactions will already be reflected on at least one income tax return, and possibly two (albeit aggregated with other transactions).  Plaintiffs cannot seriously contend that they have a privacy interest in shielding from the IRS the information that will be reported in due course anyway.  *See United States v. Ritchie*, 15 F.3d 592, 601 (6th Cir. 1994) ("we have searched in vain to find support for the proposition that there is a constitutionally protected liberty interest in spending large amounts of cash without having to account for it.").

The only remaining plaintiff, Coin Center, is a non-profit organization that is engaged in the promotion of social welfare and exempt from federal income tax as an organization described in Section 501(c)(4).  (Am. Compl., RE 27, Page ID # 261, 294-295); I.R.C. § 501(c)(4).  Plaintiffs do not allege that Coin Center has ever engaged in a trade or business.  Nor do they allege that it intends to do so.  As such, plaintiffs have not alleged any facts showing that Coin Center is subject to Section 6050I's amended reporting requirement which, by its

15256052.1

terms, is limited to cryptocurrency received in the course of a trade or business. *See* I.R.C. § 6050I(a); *accord* Treas. Reg. § 1.6050I-1(c)(6) (for purposes of the pre-amendment version of Section 6050I, the term "trade or business" has the same meaning as under I.R.C. § 162).

Plaintiffs allege that Coin Center is "arguably" subject to the amended Section 6050I by virtue of cryptocurrency it receives as charitable contributions and sponsorships for fundraising events. (Am. Compl., RE 27, Page ID # 295.) However, plaintiffs have alleged no facts suggesting that these contributions and sponsorships have any connection whatsoever to a trade or business. On the record before this Court, Coin Center thus has no obligations under the amended Section 6050I, arguable or otherwise. *See Ass'n of Am. Physicians*, 13 F.4th at 543-44 (6th Cir. 2021) (plaintiff must allege plausible factual basis for standing).

ii. Notably, plaintiffs allege that Carman and Walsh intend to use cryptocurrency both to make transactions *in* the course of their trade or business (which are potentially reportable) and transactions *outside* the course of their trade or business (which are not reportable). (Am. Compl., RE 27, Page ID # 292-293, 299.) As to transactions outside the

course of his trade or business, Carman "intends to use cryptocurrency to advance his expressive associations," including donating cryptocurrency to advocacy and religious organizations at some point in the future.  (*Id.* at Page ID # 292-293.)  For his part, Walsh "intends to use cryptocurrency to engage" in activity "unrelated" to his profit-generating activities at some point in the future.  (*Id.* at Page ID # 299.)

Plaintiffs allege that a series of events could occur in which their reporting of trade or business cryptocurrency transactions could lead to the IRS learning about their unreported, personal cryptocurrency transactions, as follows:

(1)  information about large cryptocurrency transactions that plaintiffs execute in the course of a trade or business will be reported to the IRS;

(2)  the IRS will compare the information so reported with the information that is available on the public ledgers of certain cryptocurrency exchanges;

(3)  the IRS will use the foregoing information to identify the particular addresses used by plaintiffs to make cryptocurrency transactions in the course of a trade or business; and

(4)  the IRS will search the public ledgers to locate other

transactions made by plaintiffs outside the course of their trade or

business that are not subject to Section 6050I's amended reporting

requirement.

(Opin., RE 34, Page ID # 474-475.)  As the District Court correctly

concluded, however, plaintiffs failed to allege facts demonstrating that

this series of events would likely occur and, instead, relied on a series of

"'contingent [ ] future events that may not occur as anticipated, or

indeed may not occur at all.'"  (*Id.* at Page ID # 475 (citation, internal

quotations, and alterations omitted).)  Thus, the court held that the

IRS's potential acquisition of information about plaintiffs' personal

cryptocurrency transactions was "hypothetical, conjectural, and

insufficient to establish an injury in fact."  (*Id.* at Page ID # 480.)

Plaintiffs do not challenge that holding in their opening brief, and this

Court should consider any challenge to it waived.  *See Amezola-Garcia

v. Lynch*, 846 F.3d 135, 139 n.1 (6th Cir. 2016).

iii.  As we have just explained, plaintiffs have failed to allege facts

showing that the amendment to Section 6050I will likely, much less

imminently, result in the IRS obtaining any information in which they

have a privacy interest.  This, by itself, is sufficient to demonstrate that they lack standing to bring a Fourth Amendment claim.

This conclusion is reinforced by the manner in which plaintiffs allege that they choose to engage in cryptocurrency transactions. Without acknowledging any exceptions, plaintiffs allege that cryptocurrency transactions—including the transactions in which they have engaged and intend to engage in the future—"are recorded on public ledgers."  (Am. Compl., RE 27, Page ID # 258.)  This is certainly true for many cryptocurrencies, including the only specific cryptocurrency that plaintiffs allege they use:  Bitcoin.  (*Id.* at Page ID # 291); https://bitcoin.org/en/faq#is-bitcoin-fully-virtual-and-immaterial (last visited Nov. 21, 2023).

Because transactions with Bitcoin are recorded on a public ledger, Bitcoin's website advises that "Bitcoin is not anonymous and cannot offer the same level of privacy as cash."  https://bitcoin.org/en/faq#is-bitcoin-fully-virtual-and-immaterial.  To the contrary, "Bitcoin works with an unprecedented level of transparency that most people are not used to dealing with."  https://bitcoin.org/en/protect-your-privacy (last visited Nov. 21, 2023); *see also id.* ("All Bitcoin transactions are public,

-28-

traceable, and permanently stored in the Bitcoin network.").  By

choosing to rely exclusively on public-ledger cryptocurrency exchanges,

plaintiffs have undermined any serious claim that they have a privacy

interest in the transactions executed thereon.  *See Katz v. United*

*States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to

the public, even in his own home or office, is not a subject of Fourth

Amendment protection."); *cf. Goldberger & Dubin*, 935 F.2d at 504

(people who choose to do business in cash must accept the attendant

reporting requirement); *Harper v. Rettig*, --- F. Supp. 3d ---, 2023 WL

3689528, at *6 (D. N.H. May 26, 2023), *appeal docketed*, No. 23-1565

(1st Cir.) (cryptocurrency users "lack a protectable privacy interest in

the records of their bitcoin transactions on Coinbase or other virtual

currency exchanges") (citations, internal quotations, and alterations

omitted).

Compounding the problem, plaintiffs fail to allege that they have

taken even the most rudimentary steps to protect their privacy when

executing cryptocurrency transactions.  Bitcoin's website advises that

each Bitcoin address "should only be used once" and that, "[t]o protect

your privacy, you should use a new Bitcoin address each time you

receive a new payment." https://bitcoin.org/en/protect-your-privacy.

The website further advises users to "use multiple wallets for different

purposes," which "allows you to isolate each of your transactions in such

a way that it is not possible to associate them all together." *Id.*

Plaintiffs do not allege that they have taken any of these steps and

instead vaguely allege that such steps "are not ordinarily taken" by

cryptocurrency users.[6]  (Am. Comp., RE 27, Page ID # 269.)

     iv.  Plaintiffs attempt to muddy the waters by alleging that a

cryptocurrency user "does not need to share his identifying information

… with the parties with whom he transacts." (Am. Compl., RE 27, Page

ID # 267.)  But this allegation concerns anonymity, not privacy.  Just

because cryptocurrency users might choose not to exchange identifying

information with each other when engaging in taxable transactions does

---

[6] Plaintiffs allege that the Government can retain "sophisticated,
commercial services" that employ public ledger analysts, who are
"often" able to link multiple addresses to a single individual and
thereby circumvent users' attempts to protect their privacy.  (Am.
Compl., RE 27, Page ID # 269.)  While it is, of course, true that no set of
precautions is entirely effective in protecting one's privacy, plaintiffs
offer no explanation as to why they apparently fail to take rudimentary
precautions.

not render the underlying transactions private, particularly when the users choose to engage in such transactions in a public forum.

More fundamentally, the bulk of reportable cryptocurrency transactions in which plaintiffs are engaged involve the provision of services or goods.  *See supra* pp. 10-11, 22-23.  Plaintiffs do not allege that they have engaged in any of these types of transactions anonymously.  Nor do they allege that they intend to do so in the future.  This makes sense as a practical matter, "[s]ince users usually have to reveal their identity in order to receive services or goods." https://bitcoin.org/en/protect-your-privacy.[7]

It also makes sense as a legal matter.  Under existing law, a party providing services in a trade or business must, upon demand, issue a Form W-9 to the party paying for the services, containing (among other things) the service provider's name and address.  *See* I.R.C. § 6041(c). And the party paying for the services in the course of a trade or business must issue Forms 1099 to the IRS and the service provider, containing (among other things) his name, employer identification

---

[7] The one possible exception involves cryptocurrency mining, which we address at p. 34, *infra*.

number, address, the type of payment, and the payment amount. *See* I.R.C. § 6041(a); Treas. Reg. § 1.6041-6. Notably, the obligation to issue Forms 1099 kicks in when the payment amount is only $600 in aggregate for the year—far below the $10,000 threshold applicable to cryptocurrency payments under the amended Section 6050I. *See* I.R.C. § 6041(a).

At bottom, plaintiffs have failed to allege facts showing that Section 6050I's amended reporting requirement will result in an arguable invasion of their Fourth Amendment rights, much less an imminent invasion of those rights. Under these circumstances, plaintiffs lack standing to assert a Fourth Amendment claim.

## b. Plaintiffs' Fourth Amendment claim is unripe

i. The District Court also correctly held, in the alternative, that plaintiffs' Fourth Amendment claim was unripe. (Opin., RE 34, Page ID # 474-477.) At the outset, the effective date for the 2021 amendment to Section 6050I is January 1, 2024—more than 18 months from the date plaintiffs filed their original complaint. *Supra,* p. 9. This fact, standing alone, gave the District Court pause because it was not clear what plaintiffs' cryptocurrency activities, or the Government's

15256052.1

enforcement of the amended reporting requirement, might look like as of the amendment's effective date.  (Opin., RE 34, Page ID # 474-477.)

Compounding the problem, the mere fact that the amendment to Section 6050I has a January 1, 2024 effective date does not mean that the statute's new reporting requirement will automatically go into effect on that date.  By its terms, Section 6050I provides that people engaged in a trade or business must report covered transactions "at such time as the Secretary may by regulations prescribe," "in such form as the Secretary may prescribe," and containing certain specified information as well as "such other information as the Secretary may prescribe." I.R.C. § 6050I(a), (b)(1), and (b)(2)(D).  Like other provisions of the Internal Revenue Code that have similar language, Section 6050I's reporting requirements are not self-executing and will become effective following the promulgation of implementing regulations.  *See 15 West 17th Street LLC v. Commissioner*, 147 T.C. 557, 585 (2016) ("Petitioner has cited, and our own research has discovered, no case in which a court has held to be self-executing a Code provision containing a discretionary delegation that refers to regulations that the Secretary 'may prescribe.'").

-33-

The existing regulations promulgated under Section 6050I implement the pre-amendment version of the statute and use the pre-amendment definition of "cash," namely coins, currency, and cashier's checks.  *See* Treas. Reg. § 1.6050I-1(c)(1).  Those regulations do not include digital assets or cryptocurrency, either in the definition of "cash" or elsewhere.  *See* Treas. Reg. § 1.6050I-1.

The Treasury Department and IRS have indicated their intention to initiate a rulemaking process for this purpose, but have not yet promulgated a notice of proposed rulemaking.  https://www.reginfo.gov/public/do/eAgendaViewRule?publd=202210&RIN=1545-BQ45 (last visited Nov. 26, 2023); https://www.irs.gov/pub/irs-utl/2023-2024-priority-guidance-plan-initial-version.pdf (last visited Nov. 26, 2023).  Once again, it is not clear what plaintiffs' cryptocurrency activities, or the Government's enforcement of the amended reporting requirement, might look like once amended regulations are promulgated and the amended reporting requirement actually goes into effect.

ii.  In particular, the District Court correctly noted that forthcoming guidance "could alter the compliance requirements as interpreted by Plaintiffs."  (Opin., RE 34, Page ID # 476.)  On appeal,

plaintiffs contend that, because they are mounting a facial challenge to

the amendment to Section 6050I, their constitutional claims could not

possibly be altered by the Treasury Department's forthcoming guidance.

(Br. 38 (the 2021 amendment "violate[s] the constitution no matter

what").)  However, they make no attempt to reconcile that contention

with this Court's holding that ripeness concerns are particularly acute

in cases that assert facial challenges to a statute.  *See Warshak*,

532 F.3d at 528-29.  Plaintiffs' contention that their claims could not be

altered is also puzzling.  For example, they complain about the

perceived invasion of privacy attendant to having to disclose, in their

capacity as miners, the identities of cryptocurrency users who pay for

their mining services.  But if the Treasury Department issued a

regulation providing that, in the mining context, the "person from

whom the cash was received" means the cryptocurrency platform or

exchange rather than the user, then this concern might be reduced or

eliminated.  At a minimum, it would behoove the courts to wait to

resolve the constitutionality of the amended Section 6050I, given that

the forthcoming guidance could narrow the scope of the parties' dispute.

-35-

The District Court was likewise correct in noting that plaintiffs'
activities could change before the amendment to Section 6050I goes into
effect and thereby alter both the nature of their reporting obligations
and the degree to which it might arguably intrude on their privacy.
(Opin., RE 34, Page ID # 474-476.)  For example, plaintiffs allege that
Carman has standing based, in part, on his intent to start a
cryptocurrency mining company that will receive more than $10,000 of
cryptocurrency in a single transaction or group of related transactions.
(Am. Compl., RE 27, Page ID # 291-292.)  However, Carman may not
actually start such a company and, even if he does, the company may
receive less cryptocurrency than he anticipates.  Similarly, plaintiffs
allege that Carman and Walsh intend to begin using cryptocurrency for
purposes outside the course of their trades of businesses.  (*Id.* at Page
ID # 292-293, 299.)  However, they may ultimately choose not to do so.
It makes little sense to allow plaintiffs to challenge the constitutionality
of the amended Section 6050I based on a series of allegations about
plaintiffs' intended activities that may or may not come to fruition.

iii.  Finally, the District Court correctly noted that plaintiffs were
not subject to any reporting obligations under the amendment to

-36-

Section 6050I when they filed suit.  And as we explained at pp. 32-33,

*supra*, they will become subject to any such reporting obligations

following the promulgation of new regulations.  Thus, they have yet to

incur any compliance costs under the amended Section 6050I.  Nor are

they currently facing the prospect of civil or criminal penalties under

the amended Section 6050I.  The District Court therefore had ample

support for its conclusion that any hardship on plaintiffs from delaying

the adjudication of their constitutional claims was minimal.  (Opin.,

RE 34, Page ID # 477.)

On appeal, plaintiffs argue that ripeness concerns should not

prevent adjudication of an otherwise justiciable claim "'[w]here the

inevitability of the operation of a statute against certain individuals is

patent.'"  (Br. 19, 35 (quoting *Blanchette v. Conn. Gen. Ins. Corps.*,

419 U.S. 102, 143 (1974)).)  Here, however, the Treasury Department's

forthcoming rulemaking, coupled with the amended complaint's heavy

reliance on allegations concerning how plaintiffs intend to act in the

future, leave substantial room for doubt as to whether, when, and how

Section 6050I will be applied to plaintiffs.

-37-

Plaintiffs rely heavily (Br. 3, 19, 27, 34-36, 39-40) on *Thomas More Law Ctr. v. Obama*, 651 F.3d 529 (6th Cir. 2011), *abrogated on other grounds by Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012). However, that case is not to the contrary. There, this Court held that plaintiffs had standing to challenge the minimum coverage provision of the Affordable Care Act—notwithstanding that they filed suit in 2010 and the provision's effective date was January 1, 2014—because it was a "virtual certainty" that the provision would apply to them on the effective date. *Thomas More*, 651 F.3d at 538. In support of this conclusion, this Court found that there was "no reason to think" that the plaintiffs' situation would change in such a way that the minimum coverage provision would no longer apply, such as if they were to leave the country, die, or have a disaster befall them. *Id.* at 537-38; *see also id.* at 537 ("the only developments that could prevent [the plaintiffs'] injury from occurring are not probable and indeed themselves highly speculative"). This Court further found that there was "no reason to think the law will change." *Id.* at 538. Here, as we have just explained, there are strong reasons to think that plaintiffs' situation could change,

-38-

the contours of the law could be clarified by the forthcoming

regulations, or both.

iv.  Plaintiffs make much of the fact that courts have found some

suits filed over 18 months before a statute's effective date were

nonetheless ripe.  (Br. 35-36.)  However, courts have never pretended to

establish a magic timeframe for asserting a pre-enforcement challenge.

Here, the District Court properly balanced whether the alleged harm

was likely to come to pass, the extent to which the factual record was

developed, the extent to which the Government's position might change,

and the potential hardship of delaying judicial review.  (Opin., RE 34,

Page ID # 474-477.)  This Court should not substitute plaintiffs' purely

mathematical approach for the balancing test dictated by precedent.

*See Ammex*, 351 F.3d at 706.

> **2.    Plaintiffs lack standing to assert a First
> Amendment claim, which is unripe in any event**

> **a.    Plaintiffs lack standing to assert a First
> Amendment claim**

The First Amendment provides that, among other things,

"Congress shall make no law … abridging the freedom of speech."  U.S.

CONST. amend. I.  Included in the First Amendment's scope is the

freedom of association. *Bates v. City of Little Rock*, 361 U.S. 516, 523 (1960). According to plaintiffs' amended complaint, Section 6050I's cryptocurrency reporting requirement violates their freedom of association in two ways. First, plaintiffs allege the amended Section 6050I requires that people report plaintiffs' personal associations to the Government. (Am. Compl., RE 27, Page ID # 316-317.) Second, plaintiffs allege the amended Section 6050I makes them less likely to engage in such personal associations because of concerns that the IRS may use the information reported about their trade-or-business transactions to search the public ledger for information about their personal-association transactions. (*Id.*)

Here, the District Court correctly held that plaintiffs failed to allege facts showing either that the amendment to Section 6050I would require them to directly report their personal associations or that any self-censoring would be attributable to anything other than a subjective chill. (Opin., RE 34, Page ID # 477-482.) Accordingly, there is no arguable invasion of plaintiffs' First Amendment rights, much less an imminent invasion of those rights, and they lack standing to assert a First Amendment claim seeking equitable relief.

-40-

i.  By the statute's plain terms, the only transactions that plaintiffs must report under the amendment to Section 6050I are those that occur in the course of their trades or businesses.  See I.R.C. § 6050I(a).  However, the District Court observed that plaintiffs had not alleged facts showing "that any plaintiff has or will engage in a particular 'trade or business' transaction that directly implicates associational activity."  (Opin., RE 34, Page ID # 481.)  Thus, the court held that any injury to plaintiffs' associational interests based on direct reporting was "merely speculative."  (*Id.*)  Plaintiffs do not challenge this holding in their opening brief, and this Court should consider it waived.  *See Amezola-Garcia*, 846 F.3d at 139 n.1.  Indeed, this holding is bolstered by the fact that the only reportable transactions in which plaintiffs are engaged involve the provision of services or goods and, therefore, generate taxable income that is already subject to a series of reporting and recordkeeping requirements.  *Supra*, pp. 10-11, 22-23.

ii.  Plaintiffs' indirect theory of harm fares no better.  For this category of First Amendment injury, "[a]llegations of a subjective 'chill'" are insufficient.  *Parsons*, 801 F.3d at 711 (citation and internal quotations omitted); *Morrison v. Bd. of Educ. of Boyd Cty.*, 521 F.3d

-41-

602, 609-10 (6th Cir. 2008) ("subjective apprehension and a personal
(self-imposed) unwillingness to communicate" do not constitute an
injury-in-fact cognizable under the First Amendment) (citation and
internal quotations omitted).  Rather, a plaintiff must allege a "specific
present objective harm or a threat of specific future harm." *Parsons*,
801 F.3d at 711 (citation and internal quotations omitted).

The District Court correctly held that plaintiffs failed to meet this
standard.  (Opin., RE 34, Page ID # 477-482.)  As we explained above,
the court held that plaintiffs' theory about how the IRS might obtain
information about their personal cryptocurrency transactions relied on
a series of speculative contingencies that were too remote to constitute
an injury in fact. *Supra*, pp. 25-26.  Plaintiffs do not challenge this
holding in their opening brief, and this Court should consider it waived.
*See Amezola-Garcia*, 846 F.3d at 139 n.1.  Indeed, any threat to
plaintiffs' associational interests is even more speculative than the
alleged threat to their Fourth Amendment interests, as it depends on
the IRS attempting to use the public ledger to locate not only
unreported information about plaintiffs but also unreported information
about the third parties with whom plaintiffs associate.  (Am. Compl.,

RE 34, Page ID # 316.)  Thus, the District Court correctly held that "plaintiffs were constrained only by their own subjective chill" and "have not met their burden to establish standing to bring their First Amendment claim."  (Opin., RE 34, Page ID # 480.)

### b.    Plaintiffs' First Amendment claim is unripe

The District Court also correctly held, in the alternative, that plaintiffs' First Amendment claim was unripe.  (Opin., RE 34, Page ID # 477-481.)  As discussed above, Section 6050I's amended reporting requirement will go into effect following the promulgation of new regulations.  *Supra*, pp. 32-33.  The forthcoming guidance could eliminate or ameliorate plaintiffs' concerns about the reporting requirement, and plaintiffs' activities could also change relative to those requirements.  *Supra*, pp. 31-36.  And there is no hardship to delaying adjudication, where plaintiffs have no current obligations under the amended statute and will not be subject to any potential civil or criminal enforcement action in the absence of new regulations.  *Supra*, pp. 35-36.

### 3.  Plaintiffs lack standing to assert a Fifth Amendment void-for-vagueness claim, which is unripe in any event

#### a.  Plaintiffs lack standing to assert a Fifth Amendment void-for-vagueness claim

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall … be deprived of life, liberty, or property, without due process of law."  U.S. CONST. amend. V.  Included in this provision is the requirement that statutes, regulations, and agency pronouncements define conduct subject to penalty "with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (interpreting the parallel provision in the Fourteenth Amendment).  In their amended complaint, plaintiffs allege that three aspects of Section 6050I are unconstitutionally vague as applied to cryptocurrency transactions: (i) the phrase "the person from whom the cash was received," (ii) the phrase "the date … of the transaction," and (iii) the phrase "the entire transaction occurs outside the United States."  (Am. Compl., RE 27, Page ID # 320-323.)  As discussed below, each of these concerns relates to a subset of transactions that does not present even an arguable vagueness concern, relates to a subset of transactions that none of the plaintiffs has alleged

-44-

that he is likely to engage in, or both.  Accordingly, there is no arguable invasion of plaintiffs' due process rights, much less an imminent invasion of those rights, and they lack standing to assert a due process claim seeking equitable relief.

> **i.    Plaintiffs lack standing to challenge the alleged vagueness of the phrase "the person from whom the cash was received"**

Under Section 6050I, people who receive more than $10,000 in cash, in the course of a trade or business, have long been required to file returns reporting the name, address, and taxpayer identification number of "the person from whom the cash was received."  I.R.C. § 6050I(b)(2)(A).  As amended in 2021, Section 6050I now includes digital assets in the definition of "cash."  I.R.C. § 6050I(d)(3).  Plaintiffs do not allege that the phrase "the person from whom the cash was received" lacks a readily understandable meaning when applied to transactions involving traditional currency, cash equivalents, or most digital assets.  However, they allege that the phrase lacks a readily understandable meaning when applied to several specific types of cryptocurrency transactions.  (Am. Compl., RE 27, Page ID # 320-321.) We address each type of transaction in turn.

a.  Plaintiffs first allege that the phrase "the person from whom the cash was received" is unconstitutionally vague in the context of cryptocurrency mining, wherein miners are paid (often in cryptocurrency) for validating information in the blockchain.  (Am. Compl., RE 27, Page ID # 320.)  Generally speaking, cryptocurrency generated by mining activity comes from one of two sources:  (i) the cryptocurrency platform or exchange on which the mining activity takes place or (ii) the cryptocurrency users whose transactions the miner is validating.  (Am. Compl., RE 27, Page ID # 297-298.)  There is nothing arguably vague about requiring that a miner identify the platform, exchange, or user from which he received payment.  While plaintiffs allege that cryptocurrency users have not routinely exchanged identifying information with the miners who validated their transactions in the past (Am. Compl., RE 27, Page ID # 267), this does not render the requirement that miners obtain users' identifying information vague—much less unconstitutionally so.  And without any arguable invasion of a Fifth Amendment interest, plaintiffs lack standing to assert a Fifth Amendment void-for-vagueness claim.

To be sure, miners who validate transactions in exchange for large amounts of cryptocurrency will have to figure out how to obtain the identifying information of users they may not have met in person. (Am. Compl., RE 27, Page ID # 320.) However, online merchants successfully navigate this issue in other contexts. *See*, *e.g.*, https://www.airbnb.com/help/article/1170 (last visited Nov. 14, 2023) (requiring verification of identify to reserve lodging). And it bears repeating that figuring out how to obtain cryptocurrency users' identifying information is a pragmatic concern, not a constitutional vagueness concern.

b. Relatedly, plaintiffs allege that the phrase "the person from whom the cash was received" is unconstitutionally vague in the context of online cryptocurrency sales. (Am. Compl., RE 27, Page ID # 322.) Plaintiffs allege that some merchants have historically sold "digital item[s], such as digital artwork," without requiring buyers to identify themselves. (*Id.*) Even if this is true, it does not render the requirement that merchants obtain buyers' identifying information vague—much less unconstitutionally so. And without any arguable invasion of a Fifth Amendment interest, plaintiffs again lack standing to assert a Fifth Amendment void-for-vagueness claim.

More fundamentally, plaintiffs do not allege that any of them has ever acted as a merchant in a digital asset sale, much less acted as a merchant in such a sale for which he received more than $10,000 of cryptocurrency.  Nor do they allege that any of them intends to do so in the future.  Thus, even if the online-sales context presented an arguable vagueness concern for some individuals, plaintiffs cannot assert such a void-for-vagueness claim when it presents no immediate threat to them.

c.  Plaintiffs next allege that the phrase "the person from whom the cash was received" is unconstitutionally vague in the context of "decentralized exchanges," which are transactions in which one digital asset is exchanged for another.  (Am. Compl., RE 27, Page ID # 321.) They likewise allege that the phrase is unconstitutionally vague in the context of certain "cryptocurrency transactions [that] depend on the coordinated actions of many persons," such as "transfers of value when a certain number of users out of a larger set sign off on a transaction." (*Id.*)  But plaintiffs do not allege that any of them has ever participated in such transactions.  Nor do they allege that any of them intends to engage in such transactions in the future.  Once again, the result is that

-48-

plaintiffs lack standing to assert a void-for-vagueness challenge based
on those contexts.

> ii.     **Plaintiffs lack standing to challenge
> the alleged vagueness of the phrase
> "the date of the transaction"**

When making a required return under Section 6050I, a person has
always been required to report "the date … of the transaction."  I.R.C.
§ 6050I(b)(2)(C).  As amended, that requirement will now extend to
certain receipts of cryptocurrency.  I.R.C. § 6050I(d)(3).  Plaintiffs allege
that the phrase lacks a readily understandable meaning in two types of
cryptocurrency transactions.  (Am. Compl., RE 27, Page ID # 322-323.)
We address each in turn.

First, plaintiffs allege that the phrase "the date of the transaction"
is unconstitutionally vague in the context of cryptocurrency being
transferred to an address associated with multiple people.  (Am.
Compl., RE 27, Page ID # 322.)  However, plaintiffs do not allege that
any of them has ever used an address associated with multiple people.
Nor do they allege that any of them intends to do so in the future.
Thus, even if this context presented an arguable vagueness concern for

some individuals, it presents no immediate threat to plaintiffs, and they cannot assert a void-for-vagueness claim based thereon.

Second, plaintiffs allege that the phrase "the date the cash was received" is unconstitutionally vague because a cryptocurrency user may not be notified when a large amount of cryptocurrency is transferred to his account.  (Am. Compl., RE 27, Page ID # 322-323.) Even if this is true, the user can assuredly ascertain the date he received the cryptocurrency when he checks his account later.  Although the reporting requirement may make it prudent for a person who receives cryptocurrency in the course of his trade or business to "monitor transactions involving his address regularly," (*id.* at Page ID # 323), this is a practical concern, not a constitutional vagueness concern.  And here again, plaintiffs do not allege they have ever unexpectedly (and without notice) received large amounts of cryptocurrency.  Nor do they allege that they expect to begin doing so imminently.

### iii.    Plaintiffs lack standing to challenge the alleged vagueness of the phrase "the entire transaction occurs outside the United States"

Finally, both the pre-amendment and post-amendment versions of Section 6050I provide an exception to the reporting requirement "if the entire transaction occurs outside the United States."  I.R.C. § 6050I(c)(2).  Plaintiffs allege that "[i]t could be argued that every [cryptocurrency] transaction occurs within the United States because digital asset transactions by their nature implicate computers in the United States."  (Am. Compl., RE 27, Page ID # 323.)  However, plaintiffs do not allege that any of them has ever engaged in a cryptocurrency transaction that could arguably be described as occurring even partially outside the United States, much less entirely outside the United States.  Nor do they allege that any of them intends to do so in the future.  Thus, even if the exception for transactions occurring outside the United States presented an arguable vagueness concern for some individuals, plaintiffs cannot assert a void-for-vagueness claim based on that exception when it presents no immediate threat to them.

-51-

### b.    Plaintiffs' void-for-vagueness claim is unripe

The District Court also correctly held, in the alternative, that plaintiffs' void-for-vagueness claim was unripe.  (Opin., RE 34, Page ID # 482-483.)  Once again, Section 6050I's amended reporting requirement will go into effect following the promulgation of new regulations.  *Supra*, pp. 32-33.  The forthcoming guidance could reduce or eliminate plaintiffs' concerns about the reporting requirement, and plaintiffs' activities could also change relative to those requirements.  *Supra*, pp. 31-35.  And there is no hardship to delaying adjudication, where plaintiffs had no obligations under the amended statute at the time they filed suit, continue not to have any obligations under the amended statute, and will not be subject to any potential civil or criminal enforcement action in the absence of new regulations.  *Supra*, pp. 35-36.

As the District Court correctly noted, ripeness concerns carry particular salience in the void-for-vagueness context.  (Opin., RE 34, Page ID # 482-483.)  This Court has held that "[a] federal court should not intervene and determine whether a statute enacted by Congress is unconstitutionally vague on its face before the agency with rulemaking

-52-

authority has had an opportunity to interpret the statute." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 292 (6th Cir. 1997).  This is precisely the case here, where the Treasury Department has indicated its intention to promulgate regulations that may shed light on how to interpret the terms that plaintiffs complain are ambiguous, and the amendment to Section 6050I will become effective following the promulgation of those regulations.  *Supra*, pp. 32-33.  In fact, the Treasury Department has already promulgated regulations illustrating how the concept of receipt works in the context of various traditional cash transactions, how to apply the exception for traditional cash transactions occurring entirely outside the United States, etc.  *E.g.*, Treas. Reg. § 1.6050I-1(a)(2)-(3), (d)(4).  Although plaintiffs "doubt" that the new regulations will ultimately satisfy their vagueness concerns (Br. 43-44), the fact remains that those concerns are "premature" in the absence of "final agency action interpreting the provisions of the statute alleged to be vague."  *Nat'l Rifle Ass'n*, 132 F.3d at 292.

### 4.  Plaintiffs lack standing to assert an enumerated powers claim, which is unripe in any event

#### a.  Plaintiffs lack standing to assert an enumerated powers claim

Article I, Section 8, of the Constitution provides that "[t]he Congress shall have Power to lay and collect Taxes, Duties, Imposts and Excises …"  U.S. CONST. art. I, § 8 cl. 1.  It further provides that Congress shall have the power "To make all Laws which shall be necessary and proper for carrying into Execution" its constitutional powers, including its taxing power.  *Id.* at cl. 17.  As interpreted by the courts, the so-called "Necessary and Proper Clause" empowers Congress to enact laws that are "convenient, or useful or conducive" to the exercise of its enumerated powers.  *United States v. Comstock*, 560 U.S. 126, 133-34 (2010) (citation and internal quotations omitted).  Viewed through this prism, this Court has held that statutes requiring taxpayers to file returns reporting their taxable income "are a valid exercise of the taxing power conferred by Article 1, § 8" and that arguments to the contrary are "wholly without merit."  *Acker*, 258 F.2d at 572.

Against this backdrop, plaintiffs cannot and do not allege it

exceeds Congress's enumerated powers to require that taxpayers report

the receipt of large amounts of taxable cryptocurrency.  Instead, they

allege that the amendment to Section 6050I is not such a requirement

at all, but rather a far-reaching surveillance regime.  (Am. Compl.,

RE 27, Page ID # 326-329.)  The problem with this allegation is twofold.

First, the only reportable transactions in which plaintiffs allege they

are engaged involve the provision of services or goods and, therefore,

necessarily generate taxable income.  Thus, there is no daylight

between Congress's power to lay and collect taxes and the requirement

that plaintiffs report their taxable cryptocurrency transactions.  *Supra*,

pp. 22-23.  To be sure, plaintiffs need not demonstrate, at the pleading

stage, that they will prevail on the merits of their claim that

Section 6050I's amended reporting requirement exceeds Congress's

enumerated powers.  However, we submit that plaintiffs must do more

than simply allege facts showing that, as it pertains to them, the

challenged statute falls squarely within one of Congress's enumerated

powers.  Second, plaintiffs' allegation that the IRS may use the reports

about taxable cryptocurrency income to search for personal information

unconnected thereto is based on a series of events that might not occur

and is therefore too speculative to establish an injury in fact, as the

District Court held and plaintiffs do not challenge.  (Opin., RE 34, Page

ID # 474-475, 483-484); *see also supra*, pp. 25-26, 41-42.

## b.    Plaintiffs' enumerated powers claim is unripe

The District Court also correctly held, in the alternative, that

plaintiffs' enumerated powers claim was unripe.  (Opin., RE 34, Page ID

# 483-485.)  Once again, Section 6050I's amended reporting

requirement will go into effect following the promulgation of new

regulations.  *Supra*, pp. 32-33.  The passage of time and issuance of

guidance may clarify plaintiffs' concerns about a far-reaching

surveillance regime, which the District Court noted is speculative and

may not come to fruition (Opin., RE 34, Page ID # 484), and plaintiffs'

activities could also change.  *Supra*, p. 35.  And there is no hardship to

delaying adjudication, where plaintiffs had no obligations under the

amended statute at the time they filed suit, continue not to have any

obligations under the amended statute, and will not be subject to any

potential civil or criminal enforcement action in the absence of new

regulations.  *Supra*, pp. 35-36.

15256052.1

5.    **Plaintiffs lack standing to assert a Fifth Amendment testimonial privilege claim, which is unripe in any event**

    a.    **Plaintiffs lack standing to assert a testimonial privilege claim**

As relevant here, the Fifth Amendment provides that "[n]o person … shall be compelled in any criminal case to be a witness against himself." U.S. CONST. am. V.  Although this right is often referred to as the "privilege against self-incrimination," that "is not an entirely accurate description." *United States v. Hubbell*, 530 U.S. 27, 34 (2000). The Supreme Court has held that this right, properly understood, only prevents the Government from "compell[ing] incriminating communications … that are 'testimonial' in character." *Id.*  As such, it is more accurately described as "the testimonial privilege." *Id.* at 35.

As discussed below, none of the plaintiffs has a colorable claim that Section 6050I's amended reporting requirement violates his testimonial privilege rights.  The District Court therefore correctly dismissed the plaintiffs' testimonial privilege claim for lack of jurisdiction.

At the outset, only natural persons can avail themselves of the Fifth Amendment's testimonial privilege; corporations, non-profit

organizations, and other entities have no rights thereunder. *Calif.*
*Bankers Ass'n v. Shultz*, 416 U.S. 21, 55 (1974).  Coin Center and Quiet
Industries therefore have no testimonial privilege rights, and they
cannot assert that Section 6050I's amended reporting requirement
violates their nonexistent rights.

More fundamentally, the Supreme Court has held that "the fact
that incriminating evidence may be the byproduct of obedience to a
regulatory requirement, such as filing an income tax return … [or]
maintaining required records … does not clothe such required conduct
with the testimonial privilege." *Hubbell*, 530 U.S. at 35.  In the
proceedings below, plaintiffs conceded that the District Court and this
Court are "bound by [Supreme Court] precedent saying [Section 6050I's
amended reporting requirement] does not" violate the Fifth
Amendment's Testimonial Privilege Clause.  (Opp'n to Mot. to Dismiss,
RE 32, Page ID # 439 (citing *Hubbell*).)  Consequently, none of the
plaintiffs has a colorable claim that Section 6050I's amended reporting
requirement violates his testimonial privilege rights; none of the
plaintiffs has suffered or is likely to suffer an injury to those rights; and

-58-

none of the plaintiffs has standing to bring a claim under the Fifth

Amendment's Testimonial Privilege Clause.

Moreover, even assuming that Section 6050I's amended reporting

requirement could potentially implicate *someone's* testimonial privilege

rights, plaintiffs have not shown a non-speculative possibility that it

will it implicate *their* testimonial privilege rights. Plaintiffs do not

allege that any of them has ever used cryptocurrency in a way that

implicates them in criminal conduct. Nor do plaintiffs allege that any of

them intends to do so in the future, much less when one of them might

do so. Under these circumstances, the possibility that Section 6050I's

amended reporting requirement might someday compel one or more of

the plaintiffs to potentially incriminate themselves is too speculative to

constitute an injury-in-fact. *Cf. Warth v. Seldin*, 422 U.S. 490, 499

(1975) (a plaintiff generally must assert his own rights, not the rights of

third parties).

### b.    Plaintiffs' testimonial privilege claim is unripe

The District Court also correctly held, in the alternative, that

plaintiffs' testimonial privilege claim was unripe. (Opin., RE 34, Page

ID # 20.) Once again, Section 6050I's amended reporting requirement

will go into effect following the promulgation of new regulations.
*Supra*, pp. 32-33.  Plaintiffs' cryptocurrency activities could change in
that time frame, such that the reporting requirement would be less
likely to implicate them in criminal conduct.  *Supra*, p. 35.  And there is
no hardship to delaying adjudication, where plaintiffs currently have no
obligations under the amended statute and have alleged no facts
showing that its reporting requirements could implicate them in
criminal conduct even if they did.  *Supra*, pp. 35-36.  Thus, as in
*Connection Distrib. Co. v. Holder*, "we simply have no idea whether or
when" plaintiffs' testimonial privilege rights might be implicated.
557 F.3d 321, 343 (6th Cir. 2009) (citation and internal quotations
omitted).

Plaintiffs argue "it makes no sense" to force them to violate
Section 6050I's reporting requirement in order to secure judicial review
of their testimonial privilege claim.  (Br. 44.)  But what makes no sense
is allowing plaintiffs to press a hypothetical claim about the potential
assertion of their testimonial privilege rights, untethered to any factual
allegations that those rights will ever be implicated.  The better course,

-60-

as recognized by this Court, is to withhold judicial review "until a

concrete conflict arises."  *See Connection Distrib.*, 557 F.3d at 343.

### C.    Plaintiffs' non-constitutional injuries do not provide them with standing to pursue constitutional claims

In a well-reasoned opinion, the District Court held that, for each

of their constitutional claims, plaintiffs needed to plausibly allege a

nonspeculative threat to the particular constitutional right at issue.

(Opin., RE 34, Page ID # 485-486.)  Thus, for their Fourth Amendment

claim, plaintiffs needed to allege a nonspeculative threat to at least one

plaintiff's Fourth Amendment rights; for their First Amendment claim,

plaintiffs needed to allege a nonspeculative threat to at least one

plaintiff's First Amendment rights; and so on.  (*Id.*)  Rather than

grapple with the District Court's conclusion that they had failed to

plausibly allege constitutional injuries to support their constitutional

claims, plaintiffs devote the majority of their opening brief to advancing

the position that they can pursue a constitutional claim regardless of

whether they have suffered a constitutional injury.  (Br. 20-34.)  As

discussed below, the District Court's rejection of this novel position is

supported by the precedent of this Court, the Supreme Court, and

common sense.

-61-

1. This Court has made clear that, when a claim is premised on an individual constitutional right, the plaintiff must allege a violation of that right to satisfy Article III's injury-in-fact requirement. *Parsons*, 801 F.3d at 712. For example, a plaintiff asserting claims under the First Amendment and Due Process Clause is "required" to plead an injury that is cognizable under those provisions of the Constitution. *Id.*; *see also Am. Civil Liberties Union v. Nat'l Sec. Agency*, 493 F.3d 644, 661, 673-74 (6th Cir. 2007) (plaintiff must sufficiently allege First and Fifth Amendment injuries to bring First and Fifth Amendment claims). Unless a plaintiff alleges facts demonstrating a "colorable" or "arguable" claim that the defendant invaded the legally protected interest at issue, he has not established the first element of standing, and the court lacks jurisdiction to proceed. *CHKRS*, 984 F.3d at 489; *see also id.* at 490 (plaintiff alleged "arguable" interest in property sufficient to establish standing for claim under the Fifth Amendment's Takings Clause).

Because "standing is not dispensed in gross … plaintiffs must demonstrate standing for each claim that they press." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021); *see also Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733-34 (2008) (conducting claim-by-claim

-62-

inquiry into standing); *Kanuszewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, 407-12 (6th Cir. 2019) (same); *Vonderhaar v. Village of Evendale, Oh.*, 906 F.3d 397, 401-02 (6th Cir. 2018) (same); *Parsons*, 801 F.3d at 711-13 (same). For example, a plaintiff asserting Fourth and Fifth Amendment claims must allege that he has suffered both a Fourth Amendment injury and a Fifth Amendment injury; he cannot use an injury cognizable under the Fourth Amendment to support a Fifth Amendment claim or vice versa. *Vonderhaar*, 906 F.3d at 402 ("crossover standing does not exist").

The Supreme Court and this Court have sometimes framed this standing issue in terms of the zone-of-interests test. Under this formulation, a plaintiff must "show[ ] that the interest it seeks to protect 'arguably falls within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit.'" *Huish Detergents, Inc. v. Warren Cty., Ky.*, 214 F.3d 707, 710 (6th Cir. 2000) (quoting *Bennett v. Spear*, 520 U.S. 154, 162 (1997)); *accord Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970). For example, a plaintiff asserting a claim under the Commerce Clause must plead an injury that falls

-63-

within the zone of interests protected by the Commerce Clause. *Huish Detergents*, 214 F.3d at 710-11.  At bottom, "even when litigants have established a substantial injury from a government action, they 'cannot challenge its constitutionality unless [they] can show that [they are] within the class whose constitutional rights are allegedly infringed.'" *Smith v. Jefferson Cty. Bd. of School Comm'rs*, 641 F.3d 197, 207 (6th Cir. 2011) (quoting *Barrows v. Jackson*, 346 U.S. 249, 256 (1953)).

This limitation on the jurisdiction of federal courts is consistent with the well-established principle that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Warth*, 422 U.S. at 499.  If a plaintiff were allowed to challenge the constitutionality of a statute based on a no-more-than-speculative possibility of the statute affecting his constitutional rights, then the plaintiff would, at most, be seeking to vindicate the constitutional rights of third parties.  This is precisely the result that Article III's case-or-controversy requirement is designed to avoid.  *Id*. at 499-500.

2.  Applying this test here, the District Court correctly held that plaintiffs' allegations concerning compliance costs, lost revenue, and

-64-

other non-constitutional injuries were insufficient to demonstrate

standing to pursue constitutional claims.  (Opin., RE 34, Page ID # 485-

486.)  It is beyond serious dispute that compliance costs and lost

revenue are not cognizable injuries under the Fourth Amendment, First

Amendment, or Fifth Amendment.  Similarly, it is beyond serious

dispute that compliance costs and lost revenues are not within the zone

of interests protected by the Fourth Amendment, First Amendment, or

Fifth Amendment.  Plaintiffs have not argued to the contrary, either in

the proceedings below or in their opening brief on appeal, and this

Court should therefore consider the issue waived.  *See United States v.*

*Universal Mgmt. Servs., Inc. Corp.*, 191 F.3d 750, 758-59 (6th Cir.

1999); *Amezola-Garcia*, 846 F.3d at 139 n.1.

When it evaluated plaintiffs' enumerated powers claim, the

District Court focused on the specific nature of the claim and the factual

allegations made in support thereof.  (Opin., RE 34, Page ID # 486.)  In

doing so, the court noted that plaintiffs' enumerated powers claim was

not premised on an allegation that Congress lacks authority to require

that taxpayers file returns reporting their receipt of large amounts of

income.  (*Id.*)  Rather, their claim was premised on the allegation that

the amendment to Section 6050I does no such thing and instead implements a far-reaching surveillance regime.[8]  (*Id.*)  The District Court correctly held that this allegation was based on a series of events that might not occur and was therefore too speculative to establish an injury in fact.  (Opin., RE 34, Page ID # 474-475, 483-484); *see also supra*, pp. 25-26, 41-42.  Plaintiffs do not challenge that holding in their opening brief and have therefore waived any such challenge.  *See Amezola-Garcia*, 846 F.3d at 139 n.1.

Instead of engaging with the District Court's reasoning, plaintiffs cite a series of cases in which courts held that compliance costs or lost revenue was sufficient to confer standing.  (Br. 25-26.)  The Government does not dispute that, for many claims, such harms may be sufficient.  However, plaintiffs have identified no case in which a court held that a plaintiff had standing to assert a constitutional claim in the absence of a corresponding constitutional injury and, indeed, they fail to

_____

[8] This makes the instant case distinguishable from cases like *State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48, 53 (D.C. Cir. 2015) (Kavanaugh, J.), in which a plaintiff alleges that the agency regulating it has no authority to take any action whatsoever.

acknowledge controlling precedent holding to the contrary. *See supra*, pp. 60-63.

3. In a similar vein, plaintiffs cite a number of cases in which courts held that a credible threat of enforcement was sufficient to satisfy the "certainly impending injury" component of standing. (Br. 27-30). *See*, *e.g.*, *Doster*, 54 F.4th at 416. However, none of these cases make the leap urged by plaintiffs: namely, that they should be allowed to pursue constitutional claims in the absence of constitutional injuries. To the contrary, in each case, the credible threat of enforcement was to a legally protected interest germane to the underlying claim. *See*, *e.g.*, *Doster*, 54 F.4th at 416-17 (plaintiffs had standing to assert a claim under the Religious Freedom Restoration Act based on the government's threat to punish them for engaging in conduct arguably protected by RFRA).

At all events, there is no credible threat of enforcement here, where plaintiffs currently have no obligation to report cryptocurrency transactions under the amended Section 6050I; the Government is not imposing any civil or criminal penalties against anyone based on their failure to report cryptocurrency transactions under the amended

Section 6050I; and the amendment to Section 6050I will be effective following the promulgation of new regulations.  *Supra*, pp. 32-33.

4.  Pivoting, plaintiffs cite myriad cases that supposedly stand for the proposition that a party subject to a rule has standing to challenge the legality of that rule on any and all possible theories, regardless of whether he has suffered an injury that is cognizable under those theories.  (Br. 21-24.)  Upon closer examination, these cases stand for no such thing.  In *Lujan*, the Supreme Court observed that, when a plaintiff challenges the legality of government action of which he is the object, "there is ordinarily little question that the action … has caused him injury" and he has standing.  504 U.S. at 561-62.  However, the Court ultimately determined that the plaintiffs lacked standing to challenge the rule at issue because they were not subject to it.  *Id.* at 562-67.  In *Calif. Bankers Ass'n*, the Supreme Court similarly held that plaintiffs who were not subject to a rule lacked standing to challenge it.  416 U.S. at 68-69.  And in *Crawford*, this Court did likewise.  868 F.3d at 458.

In other cases, where courts readily found that a regulated party had standing, there was no dispute that the party had alleged an

-68-

arguable invasion of his interests that was germane to his underlying claim. *See Davis*, 554 U.S. at 733-36; *Klimas v. Comcast Cable Commc'ns, Inc.*, 465 F.3d 271, 275-76 (6th Cir. 2006); *Republican Party of La. v. Fed. Election Comm'n*, 219 F. Supp. 3d 86, 92-93 (D.D.C. 2016). Here, the inverse is true.

5. Finally, plaintiffs allege that, by considering whether they had alleged an arguable constitutional injury, the District Court erroneously conflated the merits of their constitutional claims with their standing to assert such claims. (Br. 30-34.) Plaintiffs are wrong.

It is, of course, true that a plaintiff need not demonstrate that he will prevail on a claim to have standing to pursue that claim. *Davis v. United States*, 564 U.S. 229, 249 n.10 (2011); *Hicks v. State Farm Fire and Casualty Co.*, 965 F.3d 452, 463 (6th Cir. 2020). No one argues otherwise. However, a plaintiff asserting a constitutional claim must allege an arguable injury that is cognizable under the constitutional theory he asserts. *Supra*, pp. 60-63. This Court has repeatedly held as much; in fact, it has done so in numerous cases cited by plaintiffs in their opening brief. *See CHKRS*, 984 F.3d at 489; *Vonderhaar*, 906 F.3d at 402; *Parsons*, 801 F.3d at 712; *Huish Detergents*, 214 F.3d at 710-11.

-69-

## CONCLUSION

The judgment of the District Court should be affirmed.

Respectfully submitted,

DAVID A. HUBBERT
 *Deputy Assistant Attorney General*

/s/ Geoffrey J. Klimas

| | |
|---|---|
| FRANCESCA UGOLINI | (202) 514-3361 |
| ELLEN PAGE DELSOLE | (202) 514-8128 |
| GEOFFREY J. KLIMAS | (202) 307-6346 |

 *Attorneys*
 *Tax Division*
 *Department of Justice*
 *Post Office Box 502*
 *Washington, D.C. 20044*

*Of Counsel:*
CARLTON S. SHIER, IV
 *United States Attorney*

DECEMBER 4, 2023

15256052.1

# CERTIFICATE OF COMPLIANCE

## Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1.  This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    [X]  this document contains 12,827 words, **or**

    [ ]   this brief uses a monospaced typeface and contains \_\_\_\_\_ lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [X]  this document has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in Century Schoolbook 14, **or**

    [ ]   this brief has been prepared in a monospaced typeface using _____ with _____.

(s)   /s/ Geoffrey J. Klimas

Attorney for  Appellees

Dated:     December 4, 2023

# ADDENDUM

## DESIGNATION OF RELEVANT
## DISTRICT COURT DOCUMENTS

### Pursuant to Sixth Circuit Rule 30(g)

| Record Entry No. | Description | Page ID Range |
|---|---|---|
| 1 | Complaint | 1-71 |
| 27 | Amended Complaint | 256-332 |
| 32 | Opposition to Motion to Dismiss | 392-441 |
| 34 | Opinion | 466-487 |
| 35 | Judgment | 488 |
| 36 | Notice of Appeal | 489-490 |

15256052.1